[909 NYS2d 325]

THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v ERNST DE-NIS, Defendant.

District Court of Nassau County, Third District, September 22, 2010

APPEARANCES OF COUNSEL

*Judith N. Berger*, Babylon, for defendant. *Richard Finkel*, *Town Attorney*, Manhasset, for plaintiff.

## OPINION OF THE COURT

GARY F. KNOBEL, J.

Upon the foregoing papers, and after a *Mapp* hearing (*see Mapp v Ohio*, 367 US 643 [1961]), as ordered by the Honorable Tricia M. Ferrell on May 13, 2010, the branch of defendant's omnibus motion to suppress the evidence against him as the product of an illegal search is denied.

Defendant argues that an illegal, nonconsensual and warrantless search was conducted on the subject residential property located at 222 Urban Avenue, Westbury, New York. It is defendant's contention that the observations of Mr. William Smalley, a New York State certified building inspector and code enforcement officer employed by the Town of North Hempstead, were made, and such evidence was seized, in violation of the Fourth Amendment to the Constitution of the United States and the Constitution and laws of the State of New York, thus warranting suppression of the gathered evidence. The court, however, following the *Mapp* hearing, does not agree.

At a *Mapp* hearing, the People have the initial burden of establishing facts that demonstrate that the contested evidence was legally obtained (*People v Berrios*, 28 NY2d 361, 367 [1971]; *People v Torres*, 134 AD2d 633, 633 [2d Dept 1987]). The burden then shifts to the defendant to persuade the court, by a preponderance of the evidence, that the seizure was unlawful (*see generally People v Scott*, 25 Misc 3d 1219[A], 2009 NY Slip Op 52194[U] [Nassau Dist Ct 2009]). Upon a review of the record of defendant's hearing, the court finds that the testimony of Mr. Smalley "was neither incredible nor patently tailored to avoid constitutional requirements," and establishes the legality of the search and seizure at issue (*People v Torres* at 633). Furthermore, based upon the testimonial evidence adduced at the hearing, defendant falls short of meeting his burden, and has failed to establish that his rights under the Federal or State Constitution were violated warranting suppression of the evidence.

It is well settled that so-called administrative searches are subject to warrant requirements (*see Camara v Municipal Court of City & County of San Francisco*, 387 US 523 [1967]; *Matter of*

*Glenwood TV v Ratner*, 103 AD2d 322, 336 [2d Dept 1984]). It is a "fundamental principle that the Fourth Amendment to the United States Constitution and article I, § 12 of the New York Constitution accord special protection to a person's expectation of privacy in his [or her] own home." (*People v Rodriguez*, 77 AD3d 280, 283 [2d Dept 2010] [citation and internal quotation marks omitted].) However, "though warrantless entries into a home are presumptively unreasonable, [t]he touchstone of the Fourth Amendment is reasonableness—not the warrant requirement" (*People v Molnar*, 98 NY2d 328, 331 [2002] [internal quotation marks and citations omitted]). As such, a number of "carefully delineated" exceptions to the warrant requirement have developed (*id.*). Applicable here is the emergency doctrine (*see Brigham City v Stuart*, 547 US 398 [2006]; *People v Mitchell*, 39 NY2d 173 [1976]).

Furthermore, the initial entry of the fire department "to fight a fire requires no warrant, and . . . once in the building, officials may remain there for a reasonable time to investigate the cause of the blaze" (*Michigan v Tyler*, 436 US 499, 511 [1978]). The investigatory conduct of Mr. Smalley, escorted in the company of fire officials and police officers on defendant's premises, was constitutionally circumscribed by the exigency of the fire. However, the analysis does not end here.

As the Appellate Division, Second Department, noted in *People v Leggett* (75 AD3d 609, 610 [2d Dept 2010]),

> "[f]rom the time the Court of Appeals decided *People v Mitchell* (39 NY2d 173 [1976], *cert denied* 426 US 953 [1976]), our analysis of whether the emergency exception to the Fourth Amendment's protection against warrantless searches and seizures applies has been governed by the three-prong test: (1) the [authorities] must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched."

However, as the *Leggett* court noted,

> "in light of the United States Supreme Court's determination in *Brigham City v Stuart* (547 US 398,

404 [2006]) that '[t]he officer['s] subjective motivation is irrelevant' to Fourth Amendment analysis, an inquiry into the subjective motivations of the [official] is no longer necessary in determining whether that amendment was violated" (*id.* [citations omitted]).

The objective facts established at the *Mapp* hearing demonstrate that Mr. Smalley was provided with a reasonable basis to believe that an emergency was at hand, that those persons present may have been at risk of injury, that property was in need of protection, and that the emergency was associated with those rooms within the subject premises.

Based upon the testimonial evidence of Mr. Smalley, the only witness called at the *Mapp* hearing, Mr. Smalley arrived at the subject location between the times of 11:00 P.M. and 11:15 P.M. upon receiving an emergency telephone call at his home from the Nassau County Fire Commission requesting his presence at the subject house in Westbury (hearing transcript at 15). Upon arrival, he was met by officials from the Nassau County Police, the Nassau County Fire Marshal and the Westbury Fire Chief, as well as officials from the Westbury Fire Department (*id.* at 5). After a subsequent conversation with these officials, Mr. Smalley was directed and personally escorted by these officials to a fuel burning appliance (*id.* at 6). Mr. Smalley observed "charring" and evidence of malfunction, fire and smoke (*id.*). When questioned by the People if he made any further observations in the building for the purposes of safety for the building and the tenants, Mr. Smalley responded: "I wanted to make sure that any other fuel burning appliance is done well, is good" (*id.* at 6-7). Although the fire had been extinguished, in search of other fuel burning appliances in the building, Mr. Smalley investigated the lower level of the home (*id.* at 7, 16). When asked by the People what his purpose was for looking throughout the house, Mr. Smalley responded: "To make sure any heat producing appliance is not malfunctioning and looks like it's in proper order" (*id.* at 8). When questioned by defendant on whether a house could have more than one fuel burning appliance, Mr. Smalley responded that in his opinion a house may have more than one (*id.* at 20).

Subsequently, and as a result of his escorted investigation into the safety of the home's fuel burning appliances, Mr. Smalley observed in the lower level of the house a second kitchen and furnished bedrooms equipped with privacy locks operable

with a key, with the key holes positioned on the outside of the doors (*id*. at 9). It should be noted, as it relates to the safety of those within the dwelling, Mr. Smalley observed two women in the house, neither of whom identified themselves as the owner of the house (*id*. at 9-10).

Based upon on the hearing testimony, the objective facts observed by Mr. Smalley provided him with reasonable grounds to believe that another fuel burning appliance could malfunction and an emergency was at hand and that he had a reasonable basis, approaching proximate cause, to associate the emergency with the area that was searched, namely the lower level of the house. Moreover, the People sufficiently established that Mr. Smalley's search was motivated by the need to protect life and property, namely the house and those officials and civilians remaining within it, rather than for the purpose of seizing evidence. Lastly, Mr. Smalley's search was "sufficiently limited by, and reasonably related to, the exigencies of the situation" (*People v Dillon*, 44 AD3d 1068, 1070 [2d Dept 2007]).

Defendant, however, based on the testimony adduced at the hearing, failed to establish by a preponderance of evidence that the seizure was unlawful. Though the fire had been extinguished, the existence of an emergency had not been negated.

Accordingly, the branch of defendant's omnibus motion to suppress the evidence against him as the product of an illegal search is denied.