■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT LOUCKS, Appellant. [4 NYS3d 256]—

Appeal by the defendant from a judgment of the County Court, Dutchess County (Greller, J.), rendered April 30, 2012, convicting him of murder in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence and his statements to law enforcement officials.

Ordered that the judgment is affirmed.

Contrary to the defendant's contention, the County Court properly denied suppression of the physical evidence seized from the house that the defendant shared with the victim, his live-in girlfriend. The People met their burden of demonstrating the legality of the police conduct pursuant to the emergency exception to the warrant requirement (*see People v Berrios*, 28 NY2d 361, 367 [1971]; *People v Rossi*, 99 AD3d 947, 949 [2012], *affd* 24 NY3d 968 [2014]; *People v Cole*, 85 AD3d 1198 [2011]). "[Al]though warrantless entries into a home are 'presumptively unreasonable' " (*People v Molnar*, 98 NY2d 328, 331 [2002], quoting *Payton v New York*, 445 US 573, 586 [1980]), a warrantless search and seizure in a protected area may be lawful, under some circumstances, pursuant to the emergency doctrine (*see People v Mitchell*, 39 NY2d 173, 177-178 [1976]; *People v Rossi*, 99 AD3d at 949). The exception applies where the police (1) have "reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property," (2) are "not . . . primarily motivated by intent to arrest and seize evidence," and (3) have a "reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (*People v Mitchell*, 39 NY2d at 177-178; *see People v Rossi*, 99 AD3d at 949; *People v Stanislaus-Blache*, 93 AD3d 740, 741-742 [2012]).

The United States Supreme Court has held that the subjective intent of the police is not relevant in determining the reasonableness of police conduct under the Fourth Amendment to the United States Constitution (*see Brigham City v Stuart*, 547 US 398, 403 [2006]). Consequently, the second prong of *Mitchell* is now relevant, if at all, only to claims raised under the New York Constitution (*see* NY Const, art I, § 12). We need not determine in this case whether the second prong of *Mitchell* is still viable under the New York Constitution (*see People v Rossi*, 99 AD3d at 949; *People v Stanislaus-Blache*, 93 AD3d at 741-742), because we conclude that the actions of the police officers were permissible under both *Brigham City* and *Mitchell* (*see People v Stanislaus-Blache*, 93 AD3d at 742).

The evidence presented at the suppression hearing established that the police initially entered the house shared by the victim and the defendant after the police received a call reporting that the victim did not appear for a scheduled appointment with a child protective services agency for the return of her children, and a subsequent call from the grandmother of one of the children. The grandmother, who was also that child's foster

parent, had called because she was unable to reach the victim. When a patrol officer arrived at the victim's house, the grandmother, who was visibly upset and waiting outside after having knocked on the door of the house, informed the officer that it was unusual that the victim was not returning her calls. The grandmother was very troubled that the victim had failed to appear to reunite with her children because the victim had undergone a struggle to reunite with them and this was an important day for her. The grandmother further reported that she had made several unsuccessful phone calls to friends and family to locate the victim, and that she was worried about the victim's well-being. Additionally, she informed the officer that the victim was pregnant. During the interview with the grandmother, the responding officer, and another officer who subsequently arrived at the location, repeatedly knocked on the door of the house, yelled to gain the attention of any of its occupants, and walked around the outside of the house. The officers heard no response except for the sound of dogs barking from inside the house. At that point, one of the officers opened a window, stuck his head inside, and saw the defendant standing in the living room. Under these circumstances, the initial partial entry into the house through the window was lawful (*see People v Rossi*, 99 AD3d 947 [2012]; *People v Stanislaus-Blache*, 93 AD3d 740 [2012]).

Thereafter, at the officers' request, the defendant opened the front door and stepped onto the front stoop. After speaking with the officers, the defendant invited them inside and consented to their request to look around. He informed them that the victim had left the house after they argued, and he had not seen her for about a day and a half. The defendant stated that he was a "little worried" about her, and had been looking for her. This additional information established an ongoing emergency and potential danger to life, justifying the continued presence of the police and their subsequent search of the house (*see People v Rossi*, 99 AD3d 947 [2012]; *People v Stanislaus-Blache*, 93 AD3d 740 [2012]). Additionally, the testimony at the hearing established that the search was not primarily motivated by the intent to make an arrest or seize evidence, and that there was a reasonable basis, approximating probable cause, to associate the area searched with the emergency (*see People v Rossi*, 99 AD3d 947 [2012]; *People v Stanislaus-Blache*, 93 AD3d 740 [2012]). Moreover, the search that followed the initial police entry was conducted after the defendant gave his voluntary consent, and was lawful on that alternate ground (*see People v Cosme*, 48 NY2d 286, 290 [1979]; *People v Ortiz*, 87 AD3d 602 [2011]).

Contrary to the defendant's contention, the record shows that defense counsel provided meaningful representation to the defendant, and, thus, the defendant was not deprived of the effective assistance of counsel (*see People v Benevento*, 91 NY2d 708 [1998]; *People v Baldi*, 54 NY2d 137 [1981]).

The defendant's contention that the County Court erred in accepting his plea of guilty without inquiring into whether he was knowingly and voluntarily waiving a defense of intoxication (*see* Penal Law § 15.25) is unpreserved for appellate review (*see* CPL 470.05 [2]; *People v Dugin*, 51 AD3d 687 [2008]; *People v Sioleski*, 21 AD3d 501, 501-502 [2005]). In any event, this contention is without merit. Nothing in the defendant's allocution cast doubt upon his guilt, negated an essential element of murder in the second degree, or suggested that a defense of intoxication was applicable (*see People v Dugin*, 51 AD3d 687 [2008]).

The sentence imposed was not excessive (*see People v Suitte*, 90 AD2d 80 [1982]).

The defendant's remaining contentions are without merit. Mastro, J.P., Austin, Maltese and Barros, JJ., concur.