# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**997**

**KA 12-02050**

PRESENT: SCUDDER, P.J., SMITH, LINDLEY, VALENTINO, AND WHALEN, JJ.

---

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

V                                    MEMORANDUM AND ORDER

HARRY E. HARRIS, DEFENDANT-APPELLANT.

---

TIMOTHY P. DONAHER, PUBLIC DEFENDER, ROCHESTER (JANET C. SOMES OF COUNSEL), FOR DEFENDANT-APPELLANT.

SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (CANDICE SENGILLO OF COUNSEL), FOR RESPONDENT.

---

Appeal from a judgment of the Monroe County Court (Frank P. Geraci, Jr., J.), rendered October 3, 2012. The judgment convicted defendant, upon his plea of guilty, of attempted assault in the second degree.

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: On appeal from a judgment convicting him upon his plea of guilty of attempted assault in the second degree (Penal Law §§ 110.00, 120.05 [2]), defendant contends that County Court erred in refusing to suppress certain physical evidence because he was subjected to an unlawful seizure and his consent to the search of his house was coerced. We reject those contentions.

Contrary to defendant's initial contention, the court properly determined that the police officers who removed defendant from his yard did not violate defendant's constitutional rights. The testimony at the suppression hearing established that police officers had responded to the area for reports of gunshots, and a woman informed the police that she had been struck by shotgun fire that came from the area of defendant's house. A police officer testified that, upon observing defendant in that area, he immediately directed defendant to move to a safe location and patted him down for weapons. It is well settled "that police officers serve many different functions within society and that the rules governing encounters with civilians will to a large extent depend upon the police officer's purpose in initiating the encounter" (*People v Hollman*, 79 NY2d 181, 189). "Police are required to serve the community in innumerable ways, from pursuing criminals to rescuing treed cats. While the Fourth Amendment's warrant requirement is the cornerstone of our protections against unreasonable searches and seizures, it is not a barrier to a police

officer seeking to help someone in immediate danger . . . Indeed, '[p]eople could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process' . . . Accordingly, 'what would be otherwise illegal absent an . . . emergency' becomes justified by the 'need to protect or preserve life or avoid serious injury' " (*People v Molnar*, 98 NY2d 328, 331-332; *see generally People v Doll*, 21 NY3d 665, 670-671, *rearg denied* 22 NY3d 1053, *cert denied* ___ US ___, 134 S Ct 1552).  Here, we conclude that the evidence establishes that the officer acted to ensure defendant's safety and the safety of those in the area in detaining him briefly and removing him from the area in which the shots were fired (*see generally People v Edwards*, 52 AD3d 1266, 1267, *lv denied* 11 NY3d 736).

We also reject defendant's contention that he was seized in violation of his constitutional rights.  The record supports the court's conclusion that defendant was not handcuffed and placed in a police vehicle until after the officers learned that there were shotguns in the basement of his house, one of defendant's daughters informed the officers that defendant had pointed a shotgun at her head earlier in the evening, and the officers were aware that the victim had been hit by a shotgun blast from that area.  At that time, they had reasonable suspicion to detain defendant (*see generally People v De Bour*, 40 NY2d 210, 223).

Finally, we reject defendant's further contention that his consent to the search of his house was coerced because, inter alia, he was handcuffed when he agreed to permit that search.  It is well settled that "[v]oluntariness is incompatible with official coercion, actual or implicit, overt or subtle," and that " '[w]here there is coercion there cannot be consent' " (*People v Gonzalez*, 39 NY2d 122, 128, quoting *Bumper v North Carolina*, 391 US 543, 550).  Additionally, "the fact that a defendant was handcuffed has been considered a significant factor in determining whether his apparent consent was but a capitulation to authority" (*id.* at 129).  Here, however, the court concluded that defendant was not handcuffed when he consented to the search, and it is well established that "the suppression court's credibility determinations and choice between conflicting inferences to be drawn from the proof are granted deference and will not be disturbed unless unsupported by the record" (*People v Esquerdo*, 71 AD3d 1424, 1424, *lv denied* 14 NY3d 887 [internal quotation marks omitted]; *see People v May*, 100 AD3d 1411, 1412, *lv denied* 20 NY3d 1063).  There is support in the record for the court's conclusion, and we decline to disturb it.

Entered:  October 2, 2015                          Frances E. Cafarell
                                                   Clerk of the Court