■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM H. MASON, Appellant. [669 NYS2d 712] —Cardona, P. J. Appeal from a judgment of the County Court of Columbia County (Czajka, J.), rendered July 29, 1996, upon a verdict convicting defendant of the crimes of driving while intoxicated and aggravated unlicensed operation of a motor vehicle in the first degree.

On December 17, 1995, Police Officer Charles Appel observed an automobile with high beams heading south on Route 66 in the Village of Chatham, Columbia County. Appel flashed his lights a few times at the vehicle. However, the driver did not turn off his high beams. The vehicle, without signaling, made a right-hand turn at a high rate of speed in front of Appel. Appel recognized the driver as defendant, turned on his lights and siren and followed, observing the vehicle run a stop sign and slide back and forth across the road. It had been snowing and there were approximately 8 to 12 inches of snow on the ground. After failing to negotiate a curve, defendant's vehicle went into a roadside culvert spinning around before coming to rest directly opposite Appel's patrol car. Appel saw defendant exit the vehicle and run over a guardrail into a wooded area. Appel also observed a female passenger, Denise Rubio, slumped down on the passenger side of the vehicle and he remained with her.

Approximately 15 minutes later, Deputy Sheriffs William Hallenbeck and William Foster arrived, responding to Appel's earlier radio request for backup during the pursuit. Appel gave Hallenbeck defendant's name, a description of his physical appearance, including the type of clothing he wore, and indicated the direction in which he fled. He directed them to find defendant and bring him back. The Deputies followed the footprints for about 15 to 20 minutes to the back door of a ranch-style house. The Deputies did not see any footprints around the house except those they had followed from the accident scene. The back door appeared to have been forced open and was left ajar, which permitted the Deputies to see inside and down a hallway. Hallenbeck testified that, due to the signs of forced entry, he was concerned about a possible burglary and for the

safety of anyone inside the dwelling. The Deputies entered, announced their presence and, hearing nothing, began to search.

They followed a trail of water leading to a back bedroom where they found defendant lying face down on a bed. His pants and socks were wet as were his boots. Defendant stated that he had been lying in bed for approximately six hours. The Deputies observed that defendant had watery eyes, slurred speech, a strong smell of alcohol and was belligerent. They took him into custody and walked back to Appel who placed defendant under arrest. Appel administered the *Miranda* warnings and took defendant to the police station where he was read the driving while intoxicated refusal warnings and again given his *Miranda* rights. Defendant again stated that he had not been doing anything and had been sleeping for six hours at Rubio's house. Defendant refused to submit to a chemical test of his breath.

Defendant was indicted and charged with driving while intoxicated and aggravated unlicensed operation of a motor vehicle in the first degree. Following a hearing, County Court denied defendant's motion to suppress his statements and evidence of his chemical test refusal.

Following jury selection, defendant admitted special information charges consisting of a driving while intoxicated conviction within 10 years of December 17, 1995, and that his license had been revoked as a result of a conviction for operating a vehicle while under the influence of alcohol prior to that date. Defendant further admitted that the revocation was in effect at the time of the incident. At trial, however, the People elicited from Appel the fact that defendant's license had been revoked prior to December 17, 1995. Defendant's motion for a mistrial was denied. County Court conducted a second allocution outside the jury's presence, during which defendant again admitted all the required elements to establish the felony crimes of driving while intoxicated and aggravated unlicensed operation of a motor vehicle, except for his actual operation of the vehicle. The court instructed the jury not to consider questions and testimony regarding the status of defendant's driver's license. The jury returned a verdict finding defendant guilty of both counts. Defendant was sentenced to two concurrent prison terms of 1 1/3 to 4 years. Defendant appeals.

Initially, we agree with defendant's contention that County Court committed reversible error by providing the curative instruction instead of granting defendant's motion for a mistrial. Revelation of the conviction-related fact of defendant's previous license revocation rendered the special information

and arraignment procedure of CPL 200.60 "an empty gesture" (*People v Cooper*, 78 NY2d 476, 482). The court's limiting instruction was insufficient to eliminate the likelihood of prejudice to defendant (*see, id.*, at 483). Therefore, a new trial is necessary.

Since there will be a new trial, we shall address defendant's contention that County Court erred in failing to suppress his statements and evidence of his chemical test refusal upon the ground that they were the fruits of an unlawful arrest. Defendant argues that the police lacked probable cause and exigent circumstances to justify their warrantless entry into Rubio's dwelling to effect his arrest and, therefore, violated his 4th Amendment right to be free from unreasonable searches and seizures (*see, Payton v New York*, 445 US 573; *People v Levan*, 62 NY2d 139; *People v Daly*, 180 AD2d 872, *lv denied* 79 NY2d 1048; *People v Odenweller*, 137 AD2d 15).

First, we find that County Court erred in its determination that defendant lacked standing to assert a *Payton* challenge based upon its finding that defendant had no reasonable expectation of privacy in Rubio's home. In light of the sworn statements by defendant that he frequently stayed at Rubio's home and kept extra clothes there and Rubio's uncontroverted testimony that defendant was an overnight guest at her home at least four days a week (*see, Minnesota v Olson*, 495 US 91; *People v Murray*, 169 AD2d 843, *lv denied* 78 NY2d 1013), there was sufficient evidence to establish his standing to assert a *Payton* violation (*see, People v Machovoe*, 242 AD2d 898).

We next examine whether the facts known to the Deputies at the time of the warrantless entry were sufficient to establish probable cause for defendant's arrest and exigent circumstances to excuse their failure to obtain a warrant. Appel testified that, when he first approached the car, Rubio was slumped over in the passenger seat passed out. He also stated that he sent the Deputies after defendant because defendant fled the accident scene. Although the defense argues that the Deputies possessed only reasonable cause to believe that defendant fled the scene of a property damage accident (a traffic infraction [*see*, Vehicle and Traffic Law § 600 (1) (b)]), testimony by Hallenbeck shows that he was aware that an ambulance had been summoned. Based upon the proof adduced at the suppression hearing, we find that at the time they entered the residence the Deputies not only possessed probable cause to believe that defendant committed the crime of leaving the scene of a personal injury accident (a class B misdemeanor [*see*, Vehicle and Traffic Law § 600 (2) (b)]), but, more significantly, the crime

of burglary in the second degree (a class C felony [*see*, Penal Law § 140.25 (2)]). The latter crime stems from the circumstances confronting the Deputies upon their arrival at the residence. Here, it reasonably appeared to the Deputies that defendant gained entry into a private dwelling without the owner's permission. Furthermore, the evidence of forcible entry supported an inference that defendant possessed the requisite intention to commit a crime (*see*, *People v Barnes*, 50 NY2d 375, 379-381; *People v Mackey*, 49 NY2d 274, 280; *People v Henderson*, 41 NY2d 233, 236-237; *People v Privott*, 133 AD2d 528, *lv denied* 70 NY2d 936; *People v Terry*, 43 AD2d 875).

Finally, we must determine whether exigent circumstances justified the warrantless entry into the house to make the arrest. In this regard, we note "that the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches or arrests" (*Welsh v Wisconsin*, 466 US 740, 749-750). A finding of exigency requires consideration of the following factors: "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect 'is reasonably believed to be armed'; (3) 'a clear showing of probable cause * * * to believe that the suspect committed the crime'; (4) 'strong reason to believe that the suspect is in the premises being entered'; (5) 'a likelihood that the suspect will escape if not swiftly apprehended'; and (6) the peaceful circumstances of the entry" (*United States v Thomas*, 893 F2d 482, 487, *cert denied sub nom. MacDonald v United States*, 498 US 1119, quoting *United States v Reed*, 572 F2d 412, 424, *cert denied sub nom. Goldsmith v United States*, 439 US 913, quoting *Dorman v United States*, 435 F2d 385, 392-393). (*See*, *People v Williams*, 181 AD2d 474, 475-476, *lv denied* 79 NY2d 1055; *People v Cruz*, 149 AD2d 151, 160.) We note that these factors are not exhaustive and " '[t]he presence or absence of any one factor is not conclusive' " (*United States v Thomas, supra*, at 487, quoting *United States v Crespo*, 834 F2d 267, 270, *cert denied* 485 US 1007.)

Our examination of the record reveals that the first, third, fourth and sixth factors are present in this case. Burglary in the second degree is classified as a violent felony offense (*see*, Penal Law § 70.02 [1] [b]) punishable by an indeterminate sentence of up to 7½ to 15 years and, therefore, is regarded as a very serious crime. As previously noted, there was a very clear showing of probable cause that defendant committed the crime of burglary in the second degree. The Deputies had strong reason to believe that defendant was in the house. They had checked around the house and observed that the footprints

led into but not away from it. Finally, the Deputies entered peacefully through the open back door and immediately announced their presence. Added to the foregoing circumstances, we also find that defendant's flight from the police and forced predawn entry into the dwelling raised a reasonable inference that his presence inside posed a danger to any occupants.

In our view, the record demonstrates the presence of probable cause and exigent circumstances sufficient to overcome the presumption of unreasonableness which attached to the Deputies' warrantless home entry (see, *Welsh v Wisconsin*, 466 US 740, 748-749, *supra*; *Payton v New York*, 445 US 573, 586, *supra*). Accordingly, the suppression motion was properly denied.

Mercure, Crew III, Yesawich Jr. and Peters, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, and matter remitted to the County Court of Columbia County for a new trial.