■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v NAHJALIEK MCCALL, Appellant. [906 NYS2d 394]—

McCarthy, J. Appeal from a judgment of the County Court of Albany County (Herrick, J.), rendered July 15, 2008, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant, who was 15 years old at the time of the incident, was convicted of murder in the second degree as a juvenile offender for shooting another youth at a party. County Court imposed a sentence of 15 years to life in prison. Defendant appeals.

The conviction was not against the weight of the evidence. Because a different result would not have been unreasonable, this Court must " 'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony,' " while giving deference to the jury's credibility determinations (*People v Bleakley*, 69 NY2d 490, 495 [1987], quoting *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]; *see People v Davis*, 72 AD3d 1274, 1276 [2010]). Here, several members of the victim's family testified that defendant made threats against the victim and his brother in the weeks prior to the shooting, including displaying a gun, saying that the victim would get hurt and stating that something would happen on August 18. That date was significant as the birthday of defendant's slain cousin. The victim here was shot in the early morning hours of August 18, 2007. An individual at the party testified that, although the party was dark and the shooter had the hood on his sweatshirt pulled tight, she had seen defendant at the party earlier that night and recognized the shooter as defendant by his distinctive sweatshirt. She saw defendant standing near the victim, heard a shot, turned around and saw defendant bringing his arm down like he had shot in the air, then saw defendant run out of the apartment. Shell casings were located outside, in an area that a key defense witness identified as the location where shots were fired and where defendant testified that he ran. Those casings matched the sole casing discovered inside the apartment. An inmate at the jail also testified that defendant bragged about shooting the victim and revealed certain details about the crime.

Defendant presented a witness who testified that defendant was outside with her at the time of the shooting. Defendant testified similarly, as well as denying that he threatened the victim or his family, confessed to the inmate at the jail or shot

the victim. After requesting read-backs of testimony from two key witnesses, the jury obviously credited the prosecution witness who identified defendant as the shooter over the defense witness who testified that she was outside with defendant at the time of the shooting. Accepting the jury's credibility determinations, we cannot say that the verdict was against the weight of the evidence.

Defendant opened the door to testimony that he refused to provide a written statement to the police. The People normally would not have been able to elicit testimony indicating that defendant refused to supply a written statement after his mother had invoked his right to remain silent (*see People v Von Werne*, 41 NY2d 584, 587-588 [1977]). By questioning a detective regarding the police department's policy on recording statements, however, defendant opened the door to the prosecution rehabilitating the witness by letting him explain the department's policy to allow a defendant to provide a written statement, that the policy was followed here by offering defendant such an opportunity and that defendant declined (*see People v Hightower*, 237 AD2d 166, 166 [1997], *lv denied* 89 NY2d 1094 [1997]; *People v Wolcott*, 111 AD2d 513, 514-515 [1985]). County Court gave prompt and appropriate limiting instructions that defendant had a constitutional right to refuse to give a statement and the testimony was to be used only in evaluating the department's policy, curing any prejudice to defendant (*compare People v Knowles*, 42 AD3d 662, 665 [2007]).

County Court appropriately admitted the *Miranda* waiver form at the *Huntley* hearing and at trial. The form was necessarily admissible at the hearing to determine whether defendant's other statements were suppressible (*see People v Velez*, 70 AD3d 1191, 1192 [2010]). "[S]tatements made by a defendant in waiving his [or her] *Miranda* rights . . . are not admissions or statements encompassed within the notice requirements of CPL 710.30" (*People v Grimes*, 162 AD2d 1031, 1032 [1990], *lv denied* 76 NY2d 893 [1990]; *see People v Patterson*, 184 AD2d 1013, 1014 [1992], *lv denied* 80 NY2d 1029 [1992]; *see also People v Rodney*, 85 NY2d 289, 291-293 [1995]). Thus, regardless of the lack of CPL 710.30 notice referring to any written statement, the written *Miranda* waiver was admissible.

Defendant was not denied a fair trial by the prosecution's unsuccessful attempt to show that he previously stabbed the victim's brother. Although the People called the victim's brother to the stand, he testified that the person who stabbed him on two separate occasions was not present in the courtroom. County Court granted defendant's motion to strike the witness's

testimony on that subject and immediately issued the jury an appropriate instruction (*see People v Dolan*, 172 AD2d 68, 76 [1991], *lv denied* 79 NY2d 946 [1992]). No proof of defendant's criminal or violent propensities could have been inferred from testimony regarding crimes in which he was not involved (*see People v Arafet*, 13 NY3d 460, 465 [2009]). Defendant may even have benefitted from such testimony because it showed that other people bore grudges against the victim's family and contradicted testimony from the victim's mother that defendant had stabbed her son.

Defendant was provided with meaningful representation. Counsel did not object during the prosecutor's summation, thus not preserving arguments concerning any prejudicial comments (*see People v Williams*, 8 NY3d 854, 855 [2007]). The lack of objections did not deprive defendant of a fair trial, however, because the statements that defendant now points to as improper were mostly fair comment on the evidence or a response to defense counsel's summation (*see People v Cherry*, 46 AD3d 1234, 1237-1238 [2007], *lv denied* 10 NY3d 839 [2008]), and the few improper comments were not so pervasive or flagrant as to require a reversal (*see People v Hunt*, 39 AD3d 961, 964 [2007], *lv denied* 9 NY3d 845 [2007]). Defendant also contends that counsel was ineffective by failing to request a limiting instruction regarding gang-related evidence. Defense counsel elicited such proof in an apparent strategy to show that the victim may have been killed due to gang conflicts, and that defendant was not a member of a gang but instead was friendly with people from different factions. We will not second-guess this strategic decision (*see People v Cherry*, 46 AD3d at 1238). Counsel also apparently made a strategic decision against requesting an alibi charge, as noted by his objection to the alibi charge submitted by the prosecution. In any event, the court's charge as a whole effectively established the People's burden to prove all elements, including that defendant was the perpetrator (*see People v Green*, 31 AD3d 1048, 1051 [2006], *lv denied* 7 NY3d 902 [2006]). Considering the representation as a whole, defendant received the effective assistance of counsel.

We have reviewed defendant's remaining contentions and find them to be without merit.

Spain, J.P., Lahtinen, Stein and Garry, JJ., concur. Ordered that the judgment is affirmed.