■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TYRONE L. JOHNSON, Appellant. [58 NYS3d 213]—

Garry, J.P. Appeal from a judgment of the County Court of Clinton County (Ryan, J.), rendered February 19, 2014, upon a verdict convicting defendant of the crimes of criminal sale of a controlled substance in the third degree (two counts) and criminal possession of a controlled substance in the third degree (two counts).

Defendant sold crack cocaine to a confidential informant (hereinafter CI) in two controlled buys in 2012. Thereafter, he was charged by indictment with two counts of criminal sale of a controlled substance in the third degree and two counts of criminal possession of a controlled substance in the third degree. Following a jury trial, he was convicted as charged. County Court sentenced defendant to an aggregate prison term

of 14 years, followed by four years of postrelease supervision, and ordered him to pay $600 in restitution to the Clinton County District Attorney's office, with surcharges and fees. Defendant appeals.

Initially, we reject defendant's contention that audio recordings of the alleged drug transactions were inaudible and that the jury therefore gave undue weight to transcriptions prepared by the People. Whether a recording is audible is "a preliminary issue to be determined by County Court in the exercise of its discretion" (*People v Rostick*, 244 AD2d 768, 768 [1997], *lv denied* 91 NY2d 929 [1998]). An audio recording is inadmissible only when it is so muffled or indistinct that a jury cannot discern its contents without speculation. Admissibility is favored, and a partially inaudible recording will be admitted "so long as the transactions can be generally understood by the jury, [in which case] such infirmities go to the weight of the evidence and not to its admissibility" (*People v Lewis*, 25 AD3d 824, 827 [2006], *lv denied* 7 NY3d 791 [2006]; *see People v Mc-Caw*, 137 AD3d 813, 815 [2016], *lv denied* 27 NY3d 1071 [2016]; *People v Rivera*, 257 AD2d 172, 176 [1999], *affd* 94 NY2d 908 [2000]). Our review of the recordings reveals that, although background noise makes some portions inaudible, the remainder is sufficiently clear and intelligible to permit the jury to understand the contents without resorting to conjecture. As to the transcripts, County Court repeatedly instructed the jury that parts of the recordings might be inaudible, that the transcripts were not evidence and represented the People's version of what was said, and that it was for the jury to draw its own conclusions as to the correct interpretation of the recordings and the weight, if any, to give to them (*see People v Morris*, 32 AD3d 561, 562 [2006], *lv denied* 7 NY3d 869 [2006]; *People v Mitchell*, 220 AD2d 813, 814 [1995], *lv denied* 87 NY2d 905 [1995]). Accordingly, we find no abuse of discretion in the admission of the recordings or the use of the transcripts.

Next, defendant contends that the verdict is not supported by legally sufficient evidence and is against the weight of the evidence. We disagree. The investigator who conducted the controlled buys testified that she had been employed with the State Police for over 11 years, had conducted over 300 controlled buys and had assisted on hundreds more. She stated that the CI had performed approximately 20 buys and that she considered him to be credible and reliable. She was assisted on both buys by another State Police investigator. Their trial testimony and that of the CI established that the CI contacted the investigators and told them that he could arrange a con-

trolled buy to purchase crack cocaine from defendant at a specified location in Clinton County. The investigators met with the CI, who told them that defendant had changed the buy location at the last minute, a technique that was, according to the investigators, commonly used by drug sellers to avoid surveillance. The investigators searched the CI, his stepfather—who was providing the CI with transportation—and the stepfather's vehicle, and found no contraband. The CI was then provided with funds for the purchase as well as audio equipment that would record the transaction and permit the investigators to listen as it occurred.

The stepfather transported the CI to the agreed meeting location. While monitoring events through the audio equipment, the investigators followed and parked nearby. Defendant was late—another technique that the investigators stated was often used to avoid surveillance—and the stepfather and the CI left the scene briefly to look for him before returning. The investigators saw defendant arrive on foot and took several photographs of him. The CI gave the cash to defendant after they met, and they were then approached by an unknown third party. This "spooked" defendant, according to the CI; he and the CI then got into the stepfather's car and drove to another public location, where they separated briefly and, thereafter, traveled together to the CI's residence. The investigators followed and parked nearby. The CI, the stepfather and defendant entered the garage, where the investigators could not see them but listened to the transaction through the audio equipment.

The testimony of the CI and the stepfather, supported by the audio recording, established that the CI and defendant had a brief conversation in which they decided to apply part of the cash to a debt that the CI owed to defendant. Defendant then took several packages known as tie-offs from his pocket, gave two of them—containing what later proved to be crack cocaine—to the CI, and gave a third to the stepfather. The CI then met the investigators and gave them the tie-offs and the recording equipment; the investigators searched him again and found no contraband.

Several weeks later, the CI and the stepfather arranged a second controlled buy in which the CI planned to meet defendant at the CI's residence to purchase two grams of crack cocaine. As before, the investigators searched the CI, his girlfriend, who was providing the transportation, and the girlfriend's vehicle, and found no contraband. They provided the CI with audio recording equipment and cash, including the drug purchase money and some reimbursement for related ex-

penses for his phone and gasoline.* The investigators then followed the CI to his residence. Once again, defendant was late. When he eventually arrived, the CI met him outside. He and the CI then went into the residence, where the stepfather and others were present. Defendant and the CI then entered the stepfather's bedroom, where, according to the CI, they agreed after some negotiations that part of the funds would be applied to the CI's debt and part used to purchase a single gram of crack cocaine. After the transaction, the CI and his girlfriend met with the investigators and were searched; only the remaining balance of the money that they had given to the CI was found. The CI turned over the audio equipment and one tie-off containing crack cocaine.

Defendant argues that the investigators did not witness the drug transactions, and that the only eyewitnesses—the CI and the stepfather—are unworthy of belief. We disagree. The CI did acknowledge that he began acting as a CI in an effort to reduce his sentence after being charged with a crime and that charges were pending at the time of the controlled buys. He further acknowledged his significant criminal history and former addiction to narcotics. The stepfather likewise acknowledged his own long criminal history and that he was using drugs at the time of the controlled buys. However, these issues were thoroughly explored upon cross-examination, and the credibility questions that they presented were for the jury to resolve (see People v Rodriguez, 121 AD3d 1435, 1441 [2014], lv denied 24 NY3d 1122 [2015]; People v Self, 75 AD3d 924, 926 [2010], lv denied 15 NY3d 895 [2010]). We find that the evidence pertaining to both transactions was legally sufficient to support defendant's convictions (see People v Nicholas, 130 AD3d 1314, 1315-1316 [2015]; People v Gibson, 121 AD3d 1416, 1417-1418 [2014], lv denied 24 NY3d 1119 [2015]). Further, upon review, we do not find the verdict to be against the weight of the evidence (see People v Gibson, 121 AD3d at 1418; People v Tisdale, 103 AD3d 987, 988 [2013], lv denied 21 NY3d 1010 [2013]).

Next, defendant contends that he was denied a fair trial by several instances of prosecutorial misconduct during the People's summation and, further, that he was deprived of the effective assistance of counsel by defense counsel's failure to object to the allegedly improper remarks. As there were no objections to the challenged comments when they were made, defendant's prosecutorial misconduct claims are unpreserved

---

* The CI and the investigators testified that, other than such reimbursement, the CI was not paid for his work.

(*see People v Rivera*, 124 AD3d 1070, 1074-1075 [2015], *lv denied* 26 NY3d 971 [2015]; *People v Green*, 119 AD3d 23, 30 [2014], *lv denied* 23 NY3d 1062 [2014]). We do not find that corrective action in the interest of justice is warranted, as most of the challenged comments were made in response to defendant's summation or constituted fair comment on the evidence and, if any of the remarks were improper, they "were not so pervasive or flagrant as to require a reversal" (*People v McCall*, 75 AD3d 999, 1002 [2010], *lv denied* 15 NY3d 894 [2010]; *accord People v Fomby*, 101 AD3d 1355, 1357 [2012]). Defendant's ineffective assistance claim is thus unavailing, as it is premised solely upon his counsel's failure to object to the challenged comments, and any such objections would have "ha[d] little or no chance of success" (*People v Caban*, 5 NY3d 143, 152 [2005] [internal quotation marks and citation omitted]; *accord People v Gokey*, 134 AD3d 1246, 1247 [2015], *lv denied* 27 NY3d 1069 [2016]; *see People v Vargas*, 60 AD3d 1236, 1239 [2009], *lv denied* 13 NY3d 750 [2009]).

Defendant next contends that his sentence is harsh and excessive. In view of his history of many prior crimes involving drugs and weapons and multiple revocations of probation and parole, we find no abuse of discretion or extraordinary circumstances warranting modification (*see People v Taylor*, 126 AD3d 1120, 1122 [2015], *lv denied* 25 NY3d 1172 [2015], *cert denied* 577 US —, 136 S Ct 1172 [2016]). Finally, defendant's appellate challenge to the restitution award is unpreserved, as he neither requested a restitution hearing nor objected to the amount imposed (*see People v Horne*, 97 NY2d 404, 414 n 3 [2002]; *People v Shannon*, 139 AD3d 1250, 1250 [2016], *lv denied* 28 NY3d 974 [2016]). As the amount awarded is supported by the People's request, the recommendation in the presentence investigation report and the record evidence, modification in the interest of justice is unwarranted (*see* Penal Law § 60.27 [2]; *People v Goldman*, 139 AD3d 1111, 1113 [2016], *lv denied* 28 NY3d 970 [2016]).

Lynch, Rose, Clark and Aarons, JJ., concur. Ordered that the judgment is affirmed.

