Lynch, J.
 

 Appeal from a judgment of the County Court of Schenectady County (Milano, J.), rendered February 27, 2015, upon a verdict convicting defendant of the crimes of assault in the second degree, aggravated criminal contempt, criminal contempt in the first degree, criminal contempt in the second degree, resisting arrest and obstructing governmental administration in the second degree.
 

 On March 4, 2014, the police responded to a 911 call regarding a woman who had been stabbed at 779 Albany Street in the City of Schenectady, Schenectady County. When they arrived, they found the victim with a large laceration on her right leg. The victim reported that her boyfriend—defendant— inflicted the wound. A police officer working private security at 799 Albany Street suspected that defendant may have gone to his mother’s apartment at that location. The police went to defendant’s mother’s apartment, attempted without success to obtain consent to enter and, after confirming that defendant was in the apartment, forcefully entered and, after a struggle, arrested him.
 

 Defendant was indicted and, following pretrial Huntley/Wade and Payton hearings, was convicted by a jury of assault in the second degree, aggravated criminal contempt, criminal contempt in the first degree, criminal contempt in the second degree, resisting arrest and obstructing governmental administration in the second degree. County Court thereafter imposed concurrent prison terms of six years, to be followed by three years of postrelease supervision, for defendant’s conviction of assault in the second degree, 2 to 6 years for his conviction of aggravated criminal contempt and IV3 to 4 years for his conviction of criminal contempt in the first degree, and, for each of the remaining convictions, he received concurrent one-year jail terms. Defendant now appeals.
 

 Initially, defendant contends that County Court erred in finding that he did not have standing to challenge his warrantless arrest as unlawful based upon Payton v New York (445 US 573 [1980]). “It is axiomatic that warrantless entries into a home to make an arrest are presumptively unreasonable” (People v McBride, 14 NY3d 440, 445 [2010] [internal quotation marks and citations omitted]; see People v Nicholas, 118 AD3d 1183, 1187 [2014], lv denied 24 NY3d 1122 [2015]). In order to establish standing to allege a violation of one’s Fourth Amendment rights, a defendant “must demonstrate a legitimate expectation of privacy” in premises belonging to another “e.g., an overnight guest or a familial or other socially recognized relationship” (People v Ortiz, 83 NY2d 840, 842 [1994] [citation omitted]).
 

 The evidence at the suppression hearing included defendant’s sworn statement that, although the apartment at 799 Albany Street where he was arrested was in his mother’s name, he slept overnight there three to four times each week, showered, ate, watched television, kept clothing and toiletries there and invited guests to the apartment. At the hearing, officer Sean Clifford testified that he was working security at 799 Albany Street when he heard a radio dispatch that the victim had been stabbed nearby and that her boyfriend was a possible suspect. Based on his work in the building and neighborhood, Clifford knew the victim and was aware that she had an “on again off again” relationship with defendant. Clifford also testified that he went to defendant’s mother’s apartment to look for defendant because he was aware that defendant would spend time there. Another police officer, Christopher Scaccia, testified that he responded to 799 Albany Street because Clifford advised that he “knows [defendant] to stay there” with his mother. In our view, although the mother “owns” the apartment, there is no dispute in the record with regard to defendant’s regular presence at his mother’s apartment, including as an overnight guest. We therefore find that County Court erred in its determination that defendant lacked standing to assert a Payton challenge (see Minnesota v Olson, 495 US 91, 96-97 [1990]; People v Mason, 248 AD2d 751, 753 [1998]; compare People v Hill, 153 AD3d 413, 416 [2017]; People v Perretti, 278 AD2d 597, 599 [2000], lv denied 96 NY2d 762 [2001]).
 

 Although defendant had standing to challenge the warrant-less arrest, we find that County Court properly dismissed defendant’s motion on the merits. Where “there is probable cause, the police may proceed without a warrant to effectuate an arrest within a home if exigent circumstances exist to justify a warrantless entry” (People v McBride, 14 NY3d at 445; see People v Levan, 62 NY2d 139, 144 [1984]). In general, we consider certain factors to determine whether exigent circumstances may exist, including “(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause ... to believe that the suspect committed the crime; (4) [a] strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry” (People v McBride, 14 NY3d at 446 [internal quotation marks and citations omitted]). Further, a warrant is not necessary where there is a situation that requires the police to provide assistance; that is, the police may proceed into a home without a warrant provided that “[t]he police . . . have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property . . . [and] [t]here must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched” (People v Musto, 106 AD3d 1380, 1381 [2013] [internal quotation marks and citation omitted], lv denied 21 NY3d 1007 [2013]; see Brigham City v Stuart, 547 US 398, 404-405 [2006]).
 

 At the suppression hearing, Clifford testified that he knew defendant, the victim and defendant’s mother and was aware that there was a history of violence between defendant and both women. When Clifford first arrived at the mother’s apartment, he noticed what he believed to be new puncture holes in the door that appeared to be made with the tip of a knife. When Clifford knocked on the door, he could hear the mother whispering with an adult male who, based on his experience, Clifford believed to be defendant. According to Clifford, it “sounded . . . like someone was leading [the mother] or telling her what to say.” Clifford called for assistance and, in addition to Scac-cia, officers Michael Dalton and Ryan Kent and others responded. All of the officers at the scene were aware that the victim had been stabbed with a knife. Kent testified that when he arrived, a woman in the hallway indicated that defendant had just gone inside his mother’s apartment. When Clifford was unable to convince the mother to voluntarily open the door, he used a master key to unlock the door to determine whether “everything was okay,” but each time he unlocked the door to open it slightly, it was shoved closed and locked again from the inside. Based on the amount of force against the door from the inside, Clifford believed that it was defendant who was pushing the door closed. At one point, the officers were able to push the door open wide enough to allow them to see inside, and both Kent and Dalton testified that they observed defendant brandishing a knife. In our view, and contrary to defendant’s argument, we find that the evidence demonstrates that there were exigent circumstances to justify the officers’ entry into defendant’s mother’s apartment and probable cause for the arrest (see People v Junious, 145 AD3d 1606, 1608 [2016], lv denied 29 NY3d 1033 [2017]; People v Musto, 106 AD3d at 1381).
 

 Defendant also contends that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. With respect to the counts of assault in the second degree, aggravated criminal contempt and criminal contempt in the first degree, defendant, who maintained his innocence, contends that the People did not prove that he was the perpetrator of the crime. While defendant’s challenge to the legal sufficiency of the evidence supporting his aggravated criminal contempt conviction on this basis was not preserved, our weight of the evidence review necessarily includes an evaluation of whether all of the elements of the charged crimes were proven beyond a reasonable doubt (see People v Butler, 126 AD3d 1122, 1122 n [2015], lv denied 25 NY3d 1199 [2015]).
 

 A verdict is legally insufficient when, after consideration of the facts in the light most favorable to the People, there is no “valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt” (People v Denson, 26 NY3d 179, 188 [2015] [internal quotation marks and citations omitted]). When we conduct a weight of the evidence review, we first must determine that a different result would not have been unreasonable; if not, we then “weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions. Based on the weight of the credible evidence, the [C]ourt then decides whether the jury was justified in finding the defendant guilty beyond a reasonable doubt” (People v Danielson, 9 NY3d 342, 348 [2007]).
 

 The undisputed evidence at the trial was that defendant and the victim had known each other and shared a sexual relationship for at least 15 years. The victim, who conceded that she was addicted to and used heroin daily, testified that, in February 2014, she and defendant argued, the argument turned physical and, consequently, a full stay-away order of protection in the victim’s favor was issued against defendant. On March 4, 2014, the victim was with defendant at defendant’s mother’s apartment drinking, but the victim left after the two got into an argument. At approximately 8:00 p.m. that evening, the victim was in her apartment with another male when James Watson knocked at her door. As the victim opened the door to let Watson in, defendant jumped out from behind Watson and entered the apartment with a knife in his hand. The victim fell to the ground, curled into a fetal position and defendant slashed the back of her leg with the knife.
 

 During his testimony, Watson also conceded that he used heroin and crack cocaine. He testified that the victim was a friend and that he was aware that she had a relationship with defendant. On March 4, 2014, he went alone to the victim’s apartment to visit. When the victim opened the door, he was unaware that defendant was behind him and was not expecting defendant to run into the victim’s apartment. Watson testified that he saw defendant’s “hands go up but [didn’t] see exactly what’s in his hands until [the victim and defendant were] crushed over on the floor” and, when defendant’s hands came back up, he saw blood “leaking” from the victim’s leg. Watson described the knife that defendant was holding as a “Rambo knife.” Watson testified that defendant told him that he was sorry and did not mean to cause the victim’s injury. It was Watson who called 911 as defendant fled the apartment. Pauline Saunders, the victim’s downstairs neighbor, testified that she knew defendant and that when she heard the victim calling for help, she ran up the stairs and passed defendant on his way out of the building. Saunders discovered the victim on the floor with a “puddle” of blood underneath her.
 

 In contrast to Saunders, Watson and the victim, defendant testified that he did not spend any time with the victim on March 4, 2014 and that he was at his mother’s apartment at 8:00 p.m. He disputed the victim’s testimony that he had been physically abusive to her in February 2014, but acknowledged that he was aware that the order of protection existed and of its terms. According to defendant, their relationship ended after the February 2014 argument and the victim had been trying to reconcile with him.
 

 Brendan Barrett, a detective with the City of Schenectady Police Department, testified that he assembled street and elevator footage taken at the time of the stabbing and determined that a suspect—later identified as defendant— walked from the victim’s apartment building to the mother’s apartment building and that an “object” could be seen protruding from his pocket. In sum, although defendant presented some evidence to suggest that he may not have been the perpetrator, when we view the evidence in the light most favorable to the People, we find abundant evidence for the jury to conclude that defendant was the assailant with respect to the assault and contempt charges (see People v Tunstall, 149 AD3d 1249, 1252 [2017]). Further, when we review the evidence in a neutral light and accord deference to the jury’s credibility assessments, we find that the verdict was not against the weight of the evidence (see People v Danielson, 9 NY3d at 348; People v Tunstall, 149 AD3d at 1252). For the reasons set forth herein, we reject defendant’s claim that because the arrest was unlawful, the charges for resisting arrest and obstruction of governmental administration in the second degree should have been dismissed, and find that neither verdict was against the weight of the evidence.
 

 Defendant’s argument that the charges for contempt, resisting arrest and obstructing governmental administration should have been dismissed as multiplicitous because they involved the same time period, location and facts was not raised before County Court and thus not preserved for our review (see CPL 470.05 [2]; People v Blount, 129 AD3d 1303, 1304 [2015], lv denied 27 NY3d 992 [2016]). In any event, because the counts required proof of different elements (see People v Williams, 150 AD3d 1315, 1317 [2017], lv denied 30 NY3d 984 [Oct. 5, 2017]; compare People v Hoffman, 130 AD3d 1152, 1153-1154 [2015], lv denied 26 NY3d 1009 [2015]), the contention lacks merit.
 

 Defendant’s argument that he was deprived of the effective assistance of counsel is unavailing. To prevail on an ineffective assistance of counsel claim under the NY Constitution, a defendant bears the burden of establishing that defense counsel deprived him or her of a fair trial by providing less than meaningful representation (see People v Heidgen, 22 NY3d 259, 278 [2013]; People v Gokey, 134 AD3d 1246, 1246-1247 [2015], lv denied 27 NY3d 1069 [2016]). A claim of ineffective assistance of counsel under the US Constitution requires a defendant to demonstrate “that (1) his or her attorney committed errors so egregious that he or she did not function as counsel within the meaning of the [US] Constitution, and (2) that counsel’s deficient performance actually prejudiced the defendant” (People v Honghirun, 29 NY3d 284, 289 [2017] [internal quotation marks and citation omitted]). The state standard offers greater protection, “because ‘under our State Constitution, even in the absence of a reasonable probability of a different outcome, inadequacy of counsel will still warrant reversal whenever a defendant is deprived of a fair trial’ ” (id., quoting People v Caban, 5 NY3d 143, 156 [2005]). When assessing a claim of ineffective assistance, “[t]he test ... is reasonable competence, not perfect representation” (People v Carver, 27 NY3d 418, 422 [2016] [internal quotation marks and citations omitted]). Here, defendant contends that counsel failed to present sufficient evidence to support his claim that he had standing to challenge his warrantless arrest. We reject this argument because, although counsel could have presented more evidence, the evidence was sufficient to establish defendant’s standing. Moreover, when we review the record in its totality, we find that defendant received meaningful representation (see People v Kalina, 149 AD3d 1264, 1267 [2017], lv denied 29 NY3d 1092 [2017]; People v Perry, 148 AD3d 1224, 1224-1226 [2017]).
 

 Finally, we reject defendant’s claim that his sentence was harsh and excessive. Because the sentence fell within the permissible statutory guidelines, it should “not be disturbed unless it can be shown that the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification” (People v Malloy, 152 AD3d 968, 971 [2017] [internal quotation marks and citations omitted], lv denied 30 NY3d 981 [Oct. 2, 2017]). Defendant has made no such showing here.
 

 Egan Jr., J.P., Rose, Aarons and Pritzker, JJ., concur.
 

 Ordered that the judgment is affirmed.