People v Andrade (2019 NY Slip Op 03704)





People v Andrade


2019 NY Slip Op 03704


Decided on May 9, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 9, 2019

109644

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Respondent,
v
CHRISTIAN ANDRADE, Also Known as CHRISTOPHER RUIZ, Appellant.

Calendar Date: March 22, 2019

Before: Garry, P.J., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Mark Diamond, Albany, for appellant.
Andrew J. Wylie, District Attorney, Plattsburgh (Jaime A. Douthat of counsel), for respondent.



MEMORANDUM AND ORDER
Pritzker, J.
Appeal from a judgment of the County Court of Clinton County (Bruno, J.), rendered July 31, 2017, upon a verdict convicting defendant of the crimes of criminal possession of a weapon in the third degree and promoting prison contraband in the first degree.
Defendant, an inmate at Clinton Correctional Facility, was charged by indictment with criminal possession of a weapon in the third degree and promoting prison contraband in the first degree stemming from defendant leaving his cell with a two-foot long piece of wood, which he put under his shirt in the waistband of his pants. After a Huntley hearing, County Court denied defendant's motion to suppress on oral statement he made to a correction officer at that time. Following a jury trial, defendant was convicted as charged and sentenced, as a second felony offender, to a prison term of 2½ to 5 years on each count, with the sentences to run concurrently with each other but consecutively to the sentence that defendant was currently serving. Defendant appeals, and we affirm.
Defendant challenges the legal sufficiency of the evidence and also contends that the verdict was contrary to the weight of the evidence. "When reviewing a legal sufficiency claim, we must determine whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that each and every element of the charged crime[s] [has] been proven beyond a reasonable doubt" (People v Shamsuddin, 167 AD3d 1334, 1334 [2018] [internal quotations marks and citations omitted], lv denied ___ NY3d ___ [Mar. 11, 2019]; see People v Bleakley, 69 NY2d 490, 495 [1987]). Defendant's legal sufficiency challenge is only preserved as to his conviction for criminal possession of a weapon in the third degree because he did not set forth any arguments regarding promoting prison contraband in the first degree in his motion for a trial order of dismissal (see People v Crippen, 156 AD3d 946, 950 [2017]); however, "[w]e will nevertheless evaluate whether the elements of the charged crimes were proven beyond a reasonable doubt upon our weight of the evidence review" (People v Vickers, [*2]168 AD3d 1268, 1269 [2019]; see People v Crippen, 156 AD3d at 950). "A weight of the evidence review requires us first to decide whether, based on all the credible evidence, a different finding would not have been unreasonable, and then, like the trier of fact below, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony" (People v Nunes, 168 AD3d 1187, 1188 [2019]; see People v Bleakley, 69 NY2d at 495).
As relevant here, a person is guilty of criminal possession of a weapon in the third degree when "[s]uch person commits the crime of criminal possession of a weapon in the fourth degree . . . and has been previously convicted of any crime" (Penal Law § 265.02 [1]). A person is guilty of criminal possession of a weapon in the fourth degree when "[h]e or she possesses . . . [a] dangerous or deadly instrument or weapon with intent to use the same unlawfully against another" (Penal Law § 265.01 [2]). A person is guilty of promoting prison contraband in the first degree when, "[b]eing a person confined in a detention facility, he [or she] knowingly and unlawfully makes, obtains, or possesses any dangerous contraband" (Penal Law § 205.25 [2]). Contraband is defined as "any article or thing which a person confined in a detention facility is prohibited from obtaining or possessing by statute, rule, regulation or order" (Penal Law § 205.00 [3]), whereas dangerous contraband is defined as "contraband which is capable of such use as may endanger the safety or security of a detention facility or any person therein" (Penal Law § 205.00 [4]).
At trial, Benjamin Darrah, a correction officer with the Department of Corrections and Community Supervision (hereinafter DOCCS), testified that on the day of the incident, he was working as a yard officer at Clinton Correctional Facility, which entailed conducting random pat frisks as inmates went out to the yard. After defendant was randomly selected for a pat frisk by another correction officer, defendant walked toward the frisking area where Darrah was located and Darrah observed that defendant was walking with an odd gait. When defendant reached Darrah, Darrah asked him why he was walking like that, and defendant told him that he had an object "shoved down the front side of [the] waistband of his pants." Darrah asked defendant what the object was, and defendant stated that it was a dough roller, and when Darrah asked defendant why he was carrying it, defendant told him it was for protection. Darrah conducted the pat frisk and recovered the object, which he described as an "approximately two-foot-long piece of club — or piece of wood [that] looked like a club."[FN1]
Darrah explained to the jury DOCCS rules and regulations regarding contraband and dangerous contraband and gave examples of each. Darrah stated that he considers the object found on defendant to be dangerous contraband because it posed a security risk to the individuals within the facility. Darrah testified that the piece of wood would not be allowed in any area of the facility, and that if he came across that object or something like it in a cell, he would confiscate it. Darrah admitted that his treatment of the object might be different than that of another correction officer. Darrah also explained that Clinton Correctional Facility is a cooking facility that allows inmates to go out to the prison yard and cook on wood stoves. Darrah testified that inmates are allowed to bring cooking implements out to the yard, but that an object is not considered a cooking implement if an inmate can make a weapon out of it. He also explained that cooking implements cannot be brought back and forth, so once something is in the yard, it has to stay there. Darrah also explained that, if an inmate brought an object into the yard, it had to be carried in the inmate's hands or in a see-through net bag. When asked whether rolling pins were common to have in the facility, Darrah said they were not, and that he had never seen an inmate with one.
Justin St. Louis, a sergeant with DOCCS, testified at trial that he came into contact with defendant when Darrah reported to him that defendant was attempting to bring dangerous contraband out to the yard. St. Louis stated that the object that defendant possessed was approximately 22¼ to 22½ inches long, about 1¼ inches in diameter and looked like a wooden [*3]shovel or rake handle. St. Louis testified that the object was unauthorized and might or might not be dangerous, depending on the situation where it was found. St. Louis explained that many different items can be considered dangerous contraband, including a bludgeon-type weapon. St. Louis also explained that, according to DOCCS rules and regulations, the object found on defendant would be considered contraband, that an inmate would not be allowed to carry any such object and that, if St. Louis came across the object in an inmate's cell, he would confiscate it.
Defendant also testified and admitted to possessing the object, which he described as a "rolling pin" or "dough roller." Defendant explained that, on the day of the incident, he planned to go to the yard to make a pizza with another inmate. Defendant explained that he was in his cell and had fallen asleep when he heard his cell door opening, which meant that it was time to go to the yard. Defendant testified that he grabbed a sweater and scrambled to the door, only realizing as his cell door was closing that he forgot the rolling pin. Defendant was able to reach through the bars of his cell to get the rolling pin, but could not reach his net bag. Defendant explained that he put the rolling pin under his shirt because he did not want to get sent back to his cell due to not having the rolling pin in his net bag, which he knew was required for any items that were going to be brought outside into the yard. Defendant also testified that, when he was randomly selected for a pat frisk, he made it clear to the correction officers around him that he had the rolling pin. Defendant testified that he removed it from his shirt and gave it to the correction officers. Defendant testified that he did not tell Darrah or anyone else that the rolling pin was a weapon or that he intended to use it for protection. Defendant also testified that, prior to this incident, he had brought the rolling pin into the yard approximately 20 to 30 times without issue. Defendant also stated that the rolling pin was visible from his cell and that he never tried to hide it, even when his cell was searched.
First, there can be no dispute that defendant knowingly possessed the object, as he admitted to said possession, and also admitted that he knew he was not supposed to have the object without carrying it in a net bag. Therefore, our analysis turns on whether there was legally sufficient evidence that the object was a "dangerous or deadly instrument or weapon" and whether defendant had the "intent to use the same unlawfully against another" (Penal Law § 265.01 [2]). Darrah testified that the nearly two-foot-long piece of wood is considered dangerous contraband. Both Darrah and St. Louis testified that, even if used as a rolling pin, it could still be used as a weapon. Darrah also testified that defendant told him that he had the object on him for protection. Moreover, as the object was "admitted into evidence and available for the jury to inspect, . . . the jury could infer from the evidence and testimony presented" that the object was dangerous and, therefore, there was legally sufficient evidence to support the conviction for criminal possession of a weapon in the third degree (People v Cash, 95 AD3d 1374, 1375-1376 [2012], lv denied 19 NY3d 958 [2012]; see Penal Law §§ 205.25 [2]; 265.02 [1]; People v Gagnier, 146 AD3d 1019, 1021-1022 [2017], lv denied 29 NY3d 1079 [2017]; People v Aponte, 60 AD3d 1199, 1200 [2009]). As to the weight of the evidence, a different verdict would not have been unreasonable as the jury could have credited defendant's version of events over Darrah's and St. Louis' versions (see People v Martinez, 166 AD3d 1292, 1294-1295 [2018], lv denied 32 NY3d 1207 [2019]). However, viewing the evidence in a neutral light and according due deference to the credibility determinations of the jury, we find that the verdict as to both convictions is in accord with the weight of the evidence (see People v Chaneyfield, 157 AD3d 996, 1000 [2018], lv denied 31 NY3d 1012 [2018]; People v Gagnier, 146 AD3d at 1022).
We are similarly unpersuaded by defendant's contention that County Court erred in denying his motion to suppress the statement he made to Darrah during the pat frisk. As relevant here, "[i]n a correctional facility, Miranda warnings are necessary where the circumstances of the detention and interrogation entail added constraint that would lead a prison inmate reasonably to believe that there has been a restriction on the person's freedom over and above that of ordinary confinement in a correctional facility. A Miranda warning is not necessary for a relatively brief, generally public, or otherwise on-the-scene investigatory detentions that are typically not custodial" (People v Davis, 167 AD3d 1330, 1330 [2018] [internal quotation marks and citations [*4]omitted]; see People v Alls, 83 NY2d 94, 100 [1993]; People v Decker, 159 AD3d 1190, 1191-1192 [2018], lv denied 31 NY3d 1116 [2018]).
The testimony of Darrah, the sole witness at the Huntley hearing, established that after defendant was randomly sent by another correction officer to be pat-frisked, defendant admitted that he had a wooden object in the waistband of his pants. While conducting the pat frisk, Darrah uncovered the object, kept it in his possession and notified his area supervisor. While waiting for the supervisor, Darrah continued to ask defendant questions, during which defendant made an admission that the object was a weapon. During this conversation, Darrah explained that defendant was not free to leave the pat-frisk area, however, he was not in restraints. In fact, Darrah testified that defendant was not placed in restraints until he was escorted away from the area by another correction officer. In light of this testimony, we find that the exchange between defendant and Darrah was not custodial, but rather was a "routine, on-the-scene investigatory detention" (People v Decker, 159 AD3d at 1191 [internal quotation marks, bracket and citation omitted]; see People v Davis, 167 AD3d at 1331; People v Darrell, 145 AD3d at 1319; compare People v Gause, 50 AD3d 1392, 1393-1394 [2008]). Accordingly, County Court properly denied defendant's motion to suppress the statement.
Nor are we persuaded by defendant's assertion that County Court improperly allowed opinion testimony of Darrah and St. Louis. "The trial court has considerable discretion in determining the admissibility of expert testimony. The court is not required to explicitly declare a witness an expert before permitting such testimony" (People v Lamont, 21 AD3d 1129, 1132 [2005], lv denied 6 NY3d 835 [2006] [citations omitted]; see People v Garcia-Toro, 155 AD3d 1086, 1090 [2017], lv denied 30 NY3d 1115 [2018]). Additionally, when a correction officer bases his or her opinion on factual testimony, "his [or her] training and experience set forth in the record [is] sufficient to qualify him [or her] to render such an opinion" (People v Lamont, 21 AD3d at 1132; see generally People v Wright, 13 AD3d 726, 728 [2004], lv denied 5 NY3d 857 [2005]; People v Duchowney, 166 AD2d 769, 770-771 [1990]). Here, Darrah and St. Louis testified that, according to DOCCS rules and regulations, they considered the object possessed by defendant to be contraband, dangerous contraband and a weapon [FN2]. Prior to giving their opinions, Darrah and St. Louis testified as to their respective work experience, training, knowledge of DOCCS rules and regulations and, specifically, their familiarity with both contraband and dangerous contraband (see People v Garcia-Toro, 155 AD3d at 1090; People v Lamont, 21 AD3d at 1132). Given the qualifications and experience of these witnesses, we discern no error in admitting this testimony (see People v Garcia-Toro, 155 AD3d at 1090; People v Lamont, 21 AD3d at 1129; People v Wright, 13 AD3d at 728). Nor do we discern any error in the court denying defendant's request for an expert witness charge. The testimony of these witnesses was not "strictly expert testimony, but was factual testimony" based on their discovery and subsequent seizure of the object during the incident (People v Lamont, 21 AD3d at 1132). Reviewing the jury charge as a whole, it fairly instructed the jury on the correct rules to be applied, including that the jury alone was the sole judge of the facts and that the correction officers' testimony should not be believed solely because they are correction officers, and, as such, the court did not improvidently exercise its discretion in declining to give an expert witness charge (see People v Samuels, 99 NY2d 20, 25 [2002]; People v Rebollo, 107 AD3d 1059, 1061 [2013]).
Defendant's failure to raise timely and specific objections during the People's summation render his claims of prosecutorial misconduct unpreserved for our review (see CPL 470.05 [2]; People v Alexander, 160 AD3d 1121, 1124 [2018], lv denied 31 NY3d 1144 [2018]; People v Scippio, 144 AD3d 1184, 1187-1188 [2016], lv denied 28 NY3d 1150 [2017]). Were these issues before us, we would find either that the challenged comments were made in response to defendant's summation or constituted fair comment on the evidence at trial or, if any were [*5]improper, they "'were not so pervasive or flagrant as to require a reversal'" (People v Johnson, 151 AD3d 1462, 1466 [2017], lv denied 30 NY3d 1106 [2018], quoting People v McCall, 75 AD3d 999, 1002 [2010], lv denied 15 NY3d 894 [2010]). Defendant also argues that trial counsel was ineffective based solely upon the failure to object to the challenged comments. However, because any such objections would have had little or no chance of success, defendant's ineffective assistance claim is unavailing (see People v Caban, 5 NY3d 143, 152 [2005]; People v Johnson, 151 AD3d at 1466).
Garry, P.J., Mulvey, Aarons and Rumsey, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The object was admitted into evidence and was in the jury room during deliberations.

Footnote 2: We note that, when defense counsel objected to St. Louis being asked if he considered the object to be dangerous contraband, County Court sustained the objection. Also, Darrah was not asked if he considered the object to be a weapon, therefore, this question was only posed to St. Louis.