THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v TIMOTHY D. SAMUEL, Appellant. [59 NYS3d 632]—

Appeal from a judgment of the Supreme Court, Monroe County (Thomas E. Moran, J.), rendered July 2, 2012. The appeal was held by this Court by order entered March 25, 2016, decision was reserved and the matter was remitted to Supreme Court, Monroe County, for further proceedings (137 AD3d 1691). The proceedings were held and completed.

It is hereby ordered that the judgment so appealed from is unanimously modified on the law by reversing those parts convicting defendant of criminal possession of a weapon in the second degree under counts 9 and 10 of the indictment and dismissing count 10 of the indictment with respect to defendant, and as modified the judgment is affirmed.

Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of, inter alia, kidnapping in the second degree (Penal Law § 135.20), and two counts each of robbery in the first degree (§ 160.15 [2], [4]) and criminal possession of a weapon in the second degree (§ 265.03 [1] [b]), arising from an incident occurring in a house in the City of Rochester. We previously held the case, reserved decision, and remitted the matter to Supreme Court (Moran, J.) for a hearing on defendant's midtrial *Payton* motion, in which he contended that police officers improperly searched his house and used their observations as the basis for a subsequent search warrant application, thus requiring suppression of the evidence seized pursuant to the warrant (*People v Samuel*, 137 AD3d 1691 [2016]). Following that hearing, the court denied the motion to suppress the fruits of the search warrant on the ground that the initial warrantless search of the house was lawful pursuant to the emergency doctrine.

Contrary to defendant's contention, the People established that the warrantless search of the house was lawful. It is well settled that "the 'emergency doctrine' . . . recognizes that the Constitution 'is not a barrier to a police officer seeking to help someone in immediate danger' . . . , thereby excusing or justifying otherwise impermissible police conduct that is an objectively reasonable response to an apparently exigent situation . . . [The Court of Appeals has] explained that the exception is comprised of three elements: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property and this belief must be grounded in empirical facts; (2) the search must not be primarily motivated

by an intent to arrest and seize evidence; and (3) there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (*People v Doll*, 21 NY3d 665, 670-671 [2013], *rearg denied* 22 NY3d 1053 [2014], *cert denied* 572 US —, 134 S Ct 1552 [2014]). "Indeed, '[p]eople could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process' . . . Accordingly, 'what would be otherwise illegal absent an . . . emergency' becomes justified by the 'need to protect or preserve life or avoid serious injury' " (*People v Molnar*, 98 NY2d 328, 332 [2002]; *see People v Harris*, 132 AD3d 1281, 1282 [2015], *lv denied* 26 NY3d 1109 [2016]).

Here, the evidence at the suppression hearing on remittal established that all three prongs of the emergency doctrine standard were satisfied. The People submitted a large amount of evidence with respect to the first prong of the standard, including the information in the initial 911 call indicating that armed men were beating someone in a house, along with the evidence that the officers observed the bleeding and bound victim escaping from that house, one of the perpetrators attempting to escape, and the other perpetrators eventually emerging from it. Furthermore, the police had no reliable information regarding whether there were more victims or perpetrators inside the house. In addition, upon entry, the officers found quantities of blood in the basement of the house, which established that at least one person had been injured there. Thus, the first prong of the standard was met inasmuch as the evidence established that the police had reasonable grounds to believe that there was an emergency that required their immediate assistance for the protection of life or property (*see generally People v Rodriguez*, 77 AD3d 280, 282-283 [2010], *lv denied* 15 NY3d 955 [2010]). Defendant's contention that the police were not sure whether there were additional victims or perpetrators in the house is not germane "because the emergency doctrine is premised on reasonableness, not certitude" (*Doll*, 21 NY3d at 671), and the officers' belief that there could be additional injured victims or perpetrators inside the house was reasonable under these circumstances. Contrary to defendant's further contention, "the danger [that created the emergency] did not abate during the period that the officers waited to gain entry into his" house (*People v Salazar*, 290 AD2d 256, 256 [2002], *lv denied* 97 NY2d 760 [2002]; *see generally Molnar*, 98 NY2d at 334-335).

With respect to the second prong of the emergency doctrine standard, we reject defendant's contention that the initial

search was motivated by an intent to seize evidence (*see People v Mitchell*, 39 NY2d 173, 177-179 [1976]; *People v Stevens*, 57 AD3d 1515, 1516 [2008], *lv denied* 12 NY3d 822 [2009]; *People v McKnight*, 261 AD2d 926, 926 [1999], *lv denied* 94 NY2d 826 [1999]). Furthermore, with respect to the third prong, we agree with the court that there was "some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (*Doll*, 21 NY3d at 671; *see generally People v Rivera*, 172 AD2d 1059, 1059 [1991]).

Contrary to defendant's further contention, County Court (Piampiano, J.) properly denied without a hearing his pretrial motion to suppress the evidence seized pursuant to the warrant based on the insufficiency of the information in the warrant application. A challenge to the facial sufficiency of a written warrant application presents an issue of law that does not require a hearing, and here the court properly determined the merits of defendant's challenge "by reviewing the affidavits alone in order to determine whether they establish probable cause" (*People v Dunn*, 155 AD2d 75, 80 [1990], *affd* 77 NY2d 19 [1990], *cert denied* 501 US 1219 [1991]). To the extent that defendant contends that the prosecutor's failure to turn over the search warrant application during the pretrial proceedings constituted a *Brady* violation, "that contention is not preserved for our review inasmuch as defendant failed to object on that ground" (*People v Caswell*, 56 AD3d 1300, 1303 [2008], *lv denied* 11 NY3d 923 [2009], *denied reconsideration* 12 NY3d 781 [2009], *cert denied* 556 US 1286 [2009]). We decline to exercise our power to review that contention as a matter of discretion in the interest of justice (*see* CPL 470.15 [6] [a]). We have considered defendant's remaining contentions concerning the search and the warrant, and conclude that they are without merit.

Defendant further contends that the judgment must be modified by reversing those parts convicting him under counts 9 and 10 of the indictment because he was not indicted in count 9, which charged two codefendants with criminal possession of a weapon in the second degree, and the jury did not render a verdict on count 10. As the People correctly concede, defendant is correct. It is well settled that "[t]he New York State Constitution guarantees that '[n]o person shall be held to answer for a[n] infamous crime . . . unless on indictment of a grand jury' " (*People v Gonzalez*, 151 AD2d 601, 602 [1989], *lv denied* 74 NY2d 948 [1989], quoting NY Const, art I, § 6), and defendant was not charged in count 9 of the indictment. Although defendant was charged with criminal possession of a weapon in the

second degree in count 10 of the indictment, the jury did not render a verdict on that count. It is well settled that a jury's failure to render a verdict upon every count upon which it was instructed to do so "constitutes an acquittal on every count on which no verdict was rendered" (*People v Lamb*, 149 AD2d 943, 943 [1989]; *see* CPL 310.50 [3]; *People v Kinitsky*, 166 AD2d 456, 458 [1990], *lv denied* 77 NY2d 840 [1991]). We therefore modify the judgment by reversing those parts convicting defendant under counts 9 and 10, and by dismissing count 10 of the indictment with respect to defendant.

Finally, defendant contends that the sentence is unduly harsh and severe. Contrary to the People's contention, it is well settled that our "sentence-review power may be exercised, if the interest of justice warrants, without deference to the sentencing court" (*People v Delgado*, 80 NY2d 780, 783 [1992]; *see People v Lopez*, 6 NY3d 248, 260 n 5 [2006]). Consequently, we may "substitute our own discretion for that of a trial court which has not abused its discretion in the imposition of a sentence" (*People v Smart*, 100 AD3d 1473, 1475 [2012], *affd* 23 NY3d 213 [2014] [internal quotation marks omitted]; *see People v Johnson*, 136 AD3d 1417, 1418 [2016], *lv denied* 27 NY3d 1134 [2016]). Nevertheless, we conclude that the sentence is not unduly harsh or severe. Present—Smith, J.P., Peradotto, NeMoyer, Curran and Scudder, JJ.