People v Holmes (2022 NY Slip Op 06598)

People v Holmes

2022 NY Slip Op 06598

Decided on November 18, 2022

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 18, 2022
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: SMITH, J.P., PERADOTTO, CURRAN, WINSLOW, AND MONTOUR, JJ.

858 KA 20-00155

[*1]THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,
v
NOAH J. HOLMES, DEFENDANT-APPELLANT. 

JILL L. PAPERNO, ACTING PUBLIC DEFENDER, ROCHESTER, MORGAN, LEWIS & BOCKIUS LLP, NEW YORK CITY (JANNA JOASSAINTE OF COUNSEL), FOR DEFENDANT-APPELLANT. 
SANDRA DOORLEY, DISTRICT ATTORNEY, ROCHESTER (NANCY GILLIGAN OF COUNSEL), FOR RESPONDENT. 

 Appeal from a judgment of the Supreme Court, Monroe County (Judith A. Sinclair, J.), rendered January 7, 2020. The judgment convicted defendant upon a jury verdict of assault in the second degree. 
It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.
Memorandum: On appeal from a judgment convicting him upon a jury verdict of assault in the second degree (Penal Law § 120.05 [2]), defendant contends that Supreme Court erred in refusing to suppress certain evidence. Defendant initially contends that he was unlawfully arrested in the rooming house in which he resided without a warrant, and therefore any evidence obtained as a result of that arrest must be suppressed. We reject that contention.
"Courts have long recognized that the Fourth Amendment is not violated every time police enter a private premises without a warrant. Indeed, though warrantless entries into a home are 'presumptively unreasonable' . . . , '[t]he touchstone of the Fourth Amendment is reasonableness'—not the warrant requirement" (People v Molnar, 98 NY2d 328, 331 [2002]). Among the factors to be used in determining whether an entry was reasonable are " '(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry' " (People v McBride, 14 NY3d 440, 446 [2010], cert denied 562 US 931 [2010]). Ultimately, a suppression court must ascertain " 'whether in light of all the facts of the particular case there was an urgent need that justifies a warrantless entry' " (id.). Applying those factors here, we conclude that, contrary to defendant's contention, the court properly determined that exigent circumstances existed to permit the warrantless entry into defendant's room. The police observed the stab wounds that the victim sustained and had not accounted for the knife that was used to inflict them, the victim knew defendant as another resident of the rooming house in which they both lived and identified him by his nickname, and defendant's room was locked from the inside. Thus, in light of all the facts, we agree with the court that "there was an urgent need that justifie[d] a warrantless entry" (id. [internal quotation marks omitted]; see People v Crippen, 156 AD3d 946, 949 [3d Dept 2017]; People v Stevens, 57 AD3d 1515, 1515-1516 [4th Dept 2008], lv denied 12 NY3d 822 [2009]; see also People v Junious, 145 AD3d 1606, 1608 [4th Dept 2016], lv denied 29 NY3d 1033 [2017], reconsideration denied 29 NY3d 1129 [2017]).
Defendant further contends that the court erred in refusing to suppress the in-court identification testimony of the victim based on the allegedly suggestive nature of the photo array from which the victim had previously identified him. We reject that contention as well. "The [*2]composition and presentation of the photo array were such that there was no reasonable possibility that the attention of the witness would be drawn to defendant as the suspect chosen by the police" (People v Sylvester, 32 AD3d 1226, 1227 [4th Dept 2006], lv denied 7 NY3d 929 [2006]; see People v Peterkin, 153 AD3d 1568, 1569 [4th Dept 2017]; People v Smiley, 49 AD3d 1299, 1300 [4th Dept 2008], lv denied 10 NY3d 870 [2008]).
We also reject defendant's contention that the court erred in refusing to suppress, as involuntarily made, a statement that he made to the police after he was taken into custody. Where, as here, a defendant contends that he could not validly waive his rights due to his mental state, "the inquiry is whether defendant could understand the Miranda warnings and make a knowing, voluntary and intelligent waiver of his rights" (People v Stoffel, 17 AD3d 992, 993 [4th Dept 2005], lv denied 5 NY3d 795 [2005]; see People v Capela, 97 AD3d 760, 761 [2d Dept 2012], lv denied 19 NY3d 1024 [2012]; see generally People v Williams, 62 NY2d 285, 289-290 [1984]). Here, the record supports the court's determination that defendant knowingly, voluntarily and intelligently waived his rights. In any event, any error in refusing to suppress the disputed statements is harmless beyond a reasonable doubt (see People v McDonald, 173 AD3d 1633, 1635 [4th Dept 2019], lv denied 34 NY3d 934 [2019]; see generally People v Smith, 97 NY2d 324, 330 [2002]; People v Crimmins, 36 NY2d 230, 237 [1975]).
Defendant failed to object to the majority of the allegedly improper comments made by the prosecutor during voir dire and on summation, and thus failed to preserve for our review his contention that he was denied a fair trial by those comments (see CPL 470.05 [2]; People v Williams, 163 AD3d 1422, 1423 [4th Dept 2018]; People v Maxey, 129 AD3d 1664, 1666 [4th Dept 2015], lv denied 27 NY3d 1002 [2016], reconsideration denied 28 NY3d 933 [2016]). In any event, we reject defendant's contentions with respect to both the preserved and unpreserved challenges. Contrary to defendant's contentions regarding voir dire, we conclude that the prosecutor's remarks did not diminish the People's burden of proof (see People v Townsend, 171 AD3d 1479, 1480-1481 [4th Dept 2019], lv denied 33 NY3d 1109 [2019]; see generally People v Williams, 43 AD3d 1336, 1337 [4th Dept 2007]). Furthermore, the prosecutor's statements during summation were "fair comment on the evidence and did not exceed the broad bounds of rhetorical comment permissible in closing argument" (People v Davis, 38 AD3d 1170, 1172 [4th Dept 2007], lv denied 9 NY3d 842 [2007], cert denied 552 US 1065 [2007] [internal quotation marks omitted]). Even assuming, arguendo, that any of the prosecutor's comments were improper, we conclude that any improprieties "were not so pervasive or egregious as to deprive defendant of a fair trial" (People v Elmore, 175 AD3d 1003, 1005 [4th Dept 2019], lv denied 34 NY3d 1158 [2020] [internal quotation marks omitted]).
Contrary to defendant's further contention, inasmuch as he was not deprived of a fair trial by the prosecutor's comments, "[d]efense counsel's failure to object to the [majority of the] allegedly improper comments by the prosecutor . . . does not constitute ineffective assistance of counsel" (People v Lyon, 77 AD3d 1338, 1339 [4th Dept 2010], lv denied 15 NY3d 954 [2010]; see People v Nicholson, 118 AD3d 1423, 1425 [4th Dept 2014], affd 26 NY3d 813 [2016]). With respect to defendant's remaining challenges to the assistance provided by defense counsel, we conclude that, when viewed as a whole, defense counsel's efforts reflect " 'a reasonable and legitimate strategy under the circumstances and evidence presented' " (People v Tonge, 93 NY2d 838, 840 [1999]), and we thus conclude that defendant received meaningful representation (see generally People v Baldi, 54 NY2d 137, 147 [1981]).
Entered: November 18, 2022
Ann Dillon Flynn
Clerk of the Court