People v Edwards (2026 NY Slip Op 00171)

People v Edwards

2026 NY Slip Op 00171

Decided on January 15, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:January 15, 2026

112905
[*1]The People of the State of New York, Respondent,
vRashad Edwards, Appellant.

Calendar Date:November 12, 2025

Before:Pritzker, J.P., Fisher, McShan, Powers and Mackey, JJ.

Kelly L. Egan, Rensselaer, for appellant.
Mary Pat Donnelly, District Attorney, Troy (Melissa K. Swartz of counsel), for respondent.

McShan, J.
Appeal from a judgment of the County Court of Rensselaer County (Jennifer Sober, J.), rendered March 31, 2021, convicting defendant upon his plea of guilty of the crimes of murder in the second degree and criminal possession of a weapon in the third degree.
In January 2019, law enforcement initiated a welfare check at defendant's residence prompted by a call from the victim's mother indicating that she had failed to come home after visiting defendant with her child. Law enforcement attempted to conduct a wellness check but received no response after knocking and identifying themselves outside defendant's door. Meanwhile, approximately 45 minutes after police had arrived at defendant's apartment, defendant appeared at a nearby hospital with multiple stab wounds to the abdomen. The hospital advised law enforcement of defendant's arrival and, shortly after that message was relayed to officers at defendant's residence, they entered the apartment to look for the victim and child. On the first pass through the residence, law enforcement discovered the deceased victim in defendant's bedroom but did not locate the child, prompting two subsequent sweeps to ensure that the child was not secreted inside. Law enforcement subsequently learned that the child was with one of defendant's family members.
Defendant was thereafter charged by sealed indictment with murder in the second degree and criminal possession of a weapon in the third degree. In June 2019, defendant moved to suppress all of the physical evidence, arguing that the physical evidence obtained by police was seized pursuant to an illegal, warrantless search of his residence. The People opposed the motion, arguing, in relevant part, that the police acted appropriately in circumstances constituting an emergency. Following a suppression hearing, County Court denied the motion, finding that "the police had reasonable grounds to believe that there was an emergency at hand and there was an immediate need for their assistance," and that the search was not motivated by any purpose other than to ensure the safety of the victim and the child. Defendant then pleaded guilty to both counts of the indictment and was sentenced, as a second felony offender, to concurrent prison terms of 23 years to life for his conviction of murder in the second degree and 3½ to 7 years for his conviction of criminal possession of a weapon in the third degree. Defendant appeals.
The sole contention that defendant advances on appeal pertains to the denial of his suppression motion. On that, defendant contends there were no facts or circumstances to justify the emergency exception to a warrantless search and that all of the evidence procured after that point should have been suppressed. We disagree. "Subject only to carefully drawn and narrow exceptions, a warrantless search of an individual's home is per se unreasonable and hence unconstitutional" (People v Jenkins, 24 NY3d 62, 64 [2014] [internal quotation marks, brackets and citation [*2]omitted]; accord People v Sears, 165 AD3d 1482, 1483 [3d Dept 2018], lv dismissed 32 NY3d 1129 [2018]; see People v Alberts, 161 AD3d 1298, 1301-1302 [3d Dept 2018], lv denied 31 NY3d 1114 [2018]). However, "the emergency exception to the warrant requirement permits the police to make a warrantless entry into a protected area if three prerequisites are met: (1) the police must have reasonable grounds to believe that there is an emergency at hand and an immediate need for their assistance for the protection of life or property; (2) the search must not be primarily motivated by intent to arrest and seize evidence; (3) and there must be some reasonable basis, approximating probable cause, to associate the emergency with the area or place to be searched" (People v Weber, 226 AD3d 1158, 1161 [3d Dept 2024] [internal quotation marks, brackets and citations omitted], lv denied 42 NY3d 931 [2024]; see People v Gibson, 117 AD3d 1317, 1318 [3d Dept 2014], affd 24 NY3d 1125 [2015]). "[T]he requirement of reasonable grounds to believe that an emergency existed must be applied by reference to the circumstances then confronting the officer, including the need for a prompt assessment of sometimes ambiguous information concerning potentially serious consequences" (People v Gibson, 117 AD3d at 1319 [internal quotation marks and citations omitted]). "Indeed, people could well die in emergencies if police tried to act with the calm deliberation associated with the judicial process. Accordingly, what would be otherwise illegal absent an emergency becomes justified by the need to protect or preserve life or avoid serious injury" (People v Samuel, 152 AD3d 1202, 1204 [4th Dept 2017] [internal quotation marks, brackets, ellipses and citations omitted], lv denied 30 NY3d 983 [2017]; see People v Doll, 21 NY3d 665, 670 [2013], cert denied 572 US 1022 [2014]).
Beginning with the first prong, we find that the evidence sufficiently "provided the necessary objective, empirical facts" for law enforcement to reasonably determine that there was an emergency at hand (People v Musto, 106 AD3d 1380, 1382 [3d Dept 2013] [internal quotation marks and citation omitted], lv denied 21 NY3d 1007 [2013]; see People v Mitchell, 39 NY2d 173, 178 [1976], cert denied 426 US 953 [1976]). Dispatchers informed the responding officers that the victim's family had relayed their concerns about the victim and her young child, who had not returned home after visiting with defendant at his residence, and that the victim's cellphone was "pinging" in the area of defendant's residence. The victim's mother also advised dispatchers that the victim and defendant had a past history of domestic violence, and the responding officers were advised that defendant and the victim could have been arguing. After discussing the circumstances with the sergeant on duty, the decision was made not to enter the residence at that time. However, when the sergeant learned that defendant had arrived at a nearby hospital with [*3]stab wounds, he gave the directive to the initial responding officers to enter the residence once another officer arrived on scene.
Defendant contends that the delay in entering defendant's residence occasioned by the sergeant's order to wait for another officer to arrive before entering negates the finding of an emergency. We reject that argument. "Defining an emergency with the rigidity defendant proposes may encourage police — so as to give their actions the appearance of an emergency — to break in prematurely, before exhausting other reasonable means of gaining access. . . . The appropriately measured response of the police should not be declared illegal merely because they thoughtfully delayed entry for a relatively brief time" (People v Molnar, 98 NY2d 328, 334 [2002]; see People v Greenleaf, 222 AD2d 838, 840 [3d Dept 1995], lv denied 87 NY2d 973 [1996]; see also People v Samuel, 152 AD3d at 1204). To that end, we do not believe that the short delay in entry from the time that law enforcement learned of defendant's appearance at the hospital casts doubt on the presence of emergent circumstances (compare People v Mormon, 100 AD3d 782, 783 [2d Dept 2012], lv denied 20 NY3d 1102 [2013]). Accordingly, we find that the totality of facts known to law enforcement prior to their entry into defendant's residence provided a reasonable basis to conclude "that there was an emergency at hand and that there was an immediate need for their assistance for the protection of life" (People v Junious, 145 AD3d 1606, 1608 [4th Dept 2016], lv denied 29 NY3d 1033 [2017]; see People v Holmes, 210 AD3d 1510, 1511 [4th Dept 2022], lv denied 39 NY3d 1073 [2023]; People v Musto, 106 AD3d at 1382; People v Rossi, 99 AD3d 947, 951 [2d Dept 2012], affd 24 NY3d 968 [2014]; People v Manning, 301 AD2d 661, 663 [2d Dept 2003], lv denied 99 NY2d 656 [2003]; see also Colao v Mills, 39 AD3d 1048, 1051 [3d Dept 2007]; compare People v Ringel, 145 AD3d 1041, 1042-1045 [2d Dept 2016], lv denied 29 NY3d 952 [2017]).
These facts also establish that there was a reasonable basis to associate the emergency with defendant's residence. On this, defendant suggests that there was no indication that he was stabbed in his residence and that law enforcement could not be sure that the tracking of the victim's cellphone to his residence was sufficiently precise so as to locate the victim inside. However, "the emergency doctrine is premised on reasonableness, not certitude" (People v Doll, 21 NY3d at 671). These factors are not viewed in isolation; rather, we may look to the "uncertainty created by the totality of circumstances [in assessing the] need for the police to take immediate action" (People v Molnar, 288 AD2d 911, 911 [4th Dept 2001] [internal quotation marks and citation omitted], affd 98 NY2d 328 [2002]). The cellphone tracking is only one piece of information that law enforcement possessed, as they were also aware that the victim had informed her family that she was going to defendant's [*4]residence and that she and the child remained unaccounted for (see People v Weber, 226 AD3d at 1161; People v Radcliffe, 185 AD2d 662, 662 [4th Dept 1992], lv denied 80 NY2d 976 [1992]). Whatever might have been uncovered by a thorough assessment of the tracking capabilities of the victim's phone is inapposite, as the emergency doctrine contemplates that decisions must be made swiftly and without the luxury of intense scrutiny of any potential flaws or ambiguity in the information on hand (see People v Gibson, 117 AD3d at 1319; People v Rodriguez, 77 AD3d 280, 291 [2d Dept 2010], lv denied 15 NY3d 955 [2010]). Thus, we find no infirmity in law enforcement considering the aforementioned information alongside the sudden appearance of defendant at the hospital with stab wounds, which collectively provided a reasonable basis to believe that the victim and the child were in danger inside defendant's residence (see People v Mitchell, 39 NY2d at 179; see also Michigan v Fisher, 558 US 45, 49 [2009]).
Lastly, although defendant does not focus his argument on the second prong of analysis, to the extent that it remains applicable under the NY Constitution (see People v Musto, 106 AD3d at 1381; see also Brigham City v Stuart, 547 US 398, 404-405 [2006]; People v Dallas, 8 NY3d 890, 891 [2007]; People v Carey, 237 AD3d 741, 742 [2d Dept 2025]), we find that the testimony at the fact-finding hearing provides an objective basis to conclude that law enforcement's entry into his residence was not motivated by an intent to seize evidence or make an arrest (see People v Mitchell, 39 NY2d at 178-179; People v McKnight, 261 AD2d 926, 926 [4th Dept 1999], lv denied 94 NY2d 826 [1999]). Accordingly, County Court properly denied defendant's suppression motion. Defendant's remaining contentions, to the extent they are not explicitly addressed, have been considered and found unavailing.
Pritzker, J.P., Fisher, Powers and Mackey, JJ., concur.
ORDERED that the judgment is affirmed.